**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**VIVA REALTY GROUP & INVESTMENTS LLC**, a Colorado corporation,

Plaintiffs,

v.

**AUTO-OWNERS INSURANCE COMPANY**, a Michigan corporation,

Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff Viva Realty Group & Investments LLC ("Plaintiff"), by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant Auto-Owners Insurance Company, and states as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of covered insurance benefits including recoverable depreciation.

### II. PARTIES

2. Viva Realty Group & Investments LLC ("Plaintiff") is a Colorado corporation with its principal place of business at 15704 East Saratoga Place, Aurora, CO 80015.

3. Auto-Owners Insurance Company ("Defendant") is a Michigan corporation with its principal place of business located in Lansing, Michigan and is authorized to do business in Colorado.

### III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

### IV. GENERAL ALLEGATIONS

5. Plaintiff sought and obtained an insurance policy, Policy No. 114632 74 032077 (hereinafter "the Policy"), from Defendant for commercial property located at 2911 West 38th Avenue, Denver, CO 80211 (hereinafter "the Property").

6. On or about May 8, 2017, during the Policy period, a hail and windstorm hit Plaintiff's Property causing property damage.

7. On or about August 3, 2017, Plaintiff filed its claim with Defendant and Defendant issued claims number 074-0000480-2017 to Plaintiff. Defendant also assigned the loss to its in-house adjuster Chad Verastek.

8. Upon information and belief, on or about August 3, 2017, Mr. Verastek then hired Catastrophe Specialist, Inc. ("CSI") as Defendant's building consultant on the claim to inspect the Property and provide an assessment of covered damages related to the date of loss.

9. Upon information and belief, CSI is a preferred vendor of Defendant and Defendant utilizes the services of CSI because CSI provides favorable low-ball estimates to Defendant on claims. Upon information and belief, Defendant's use of CSI to undervalue claims is evidence of unreasonable delay and denial of an insurance claim under Colorado law.

10. On or about August 4, 2017, Plaintiff hired Gold Star Premium Contracting ("Gold Star") as its contractor to perform repairs related to the date of loss damages.

11. On or about August 4, 2017, Gold Star inspected Plaintiff's Property and determined that the covered loss for Building 2's roof had a replacement cost value of $192,768.52 (actual cash value of $115,680.80).

12. On or about August 8, 2017, Plaintiff hired Tobin Heating and Air Conditioning ("Tobin") to provide an HVAC damage evaluation and repair protocol related to the date of loss damages.

13. On or about August 8, 2017, Tobin inspected the Property's HVAC units and determined that the cost of repairs was $44,569.00 in replacement cost value ($37,883.65).

14. Upon information and belief, Plaintiff timely disclosed both Gold Star's estimate and Tobin's estimates to Defendant for consideration on the claim.

15. On or about August 9, 2017, CSI's representative Nolan Cunningham inspected the Property for covered damage from the date of loss. Upon information and belief and based on Mr. Verastek's second half statements about the investigation, Mr. Cunningham observed damage to Plaintiff's HVAC unit fins, soft metals on the roof and roof cap flashing. Based on this inspection, Mr.

Cunningham drafted an estimate for repairs with a replacement cost value of $7,914.62.

16. On or about August 14, 2017, Plaintiff then instructed Mr. Verastek that there was also interior water damage associated with the date of loss damages.

17. Upon information and belief, shortly after this conversation, Mr. Verastek retained the services of Rimkus Consulting Group, Inc. ("Rimkus") to provide their engineering analysis on Plaintiff's roof damage.

18. Upon information and belief, Rimkus is a captive engineering firm for Defendant and provides biased reports for Defendant to limit Defendant's risk exposure on hail claims. Upon information and belief, Defendant's use of partial engineers to adjust claims is evidence of bad faith under Colorado law.

19. On or about August 23, 2017, Rimkus inspected the Property in an attempt to determine the source of the interior water leak reports and to report on the damage to Plaintiff's roofing system from the date of loss. Upon information and belief, on or about this time, Plaintiff also hired Paul Konovalov with Konovalov & Associates Public Adjusting Services, LLC as his public adjuster on the claim.

20. Upon information and belief, Rimkus' inspection revealed at least 5 areas on the west-facing parapet wall consistent with hail damage from the date loss. However, Rimkus failed to properly identify other covered damage from the date of loss on Plaintiff's roof.

21. Upon information and belief, Rimkus attributed the interior water leaks to only "weather" and long-term deterioration. Upon information, "weather" is a covered peril under the Policy's terms and conditions and includes hail.

22. On or about November 13, 2017, Mr. Verastek sent Mr. Konovalov Defendant's initial coverage letter mirroring its November 17, 2017 decision letter below.

23. On or about November 17, 2017, Mr. Verastek sent Plaintiff its amended coverage decision letter outlining the above alleged facts from its investigation and attaching CSI's estimate of repairs as the covered benefits from the date of loss. Upon information and belief, Defendant provided no basis why it took Defendant from August 23, 2017 to November 17, 2017 to provide its coverage decision regarding the claim and Defendant unreasonable delayed and denied at least portion of Plaintiff's claim.

24. Upon information and belief, Mr. Verastek also stated in his letter that all observed damage to the insulation under Plaintiff's EPDM roofing system was caused by a lack of pavers on the roof and foot traffic.

25. Upon information and belief, Mr. Verastek concurrently sent Plaintiff and Mr. Konovalov an email attaching this letter and also stating that Defendant still needed dates for a joint engineering inspection of the Property.

26. On or about November 20, 2017, Mr. Konovalov sent Mr. Verastek an email attaching Crown Jade Design and Engineering, LLC's engineering inspection results. Based on these results, Mr. Konovalov also requested that Defendant adjust its estimate of damages for a full roof replacement.

27. On or about November 27, 2017, Mr. Verastek emailed Mr. Konovalov to schedule the engineering inspection and also noted his understanding of Crown Jade's report as indicating that the gravel ballast on Plaintiff's roof had been removed and pushed back to show damage to the underlayment and substrate.

28. On or about December 5, 2017, Mr. Konovalov responded that the Crown Jade inspection took place at the same site on the roof as where Rimkus previously inspected. Mr. Konovalov also highlighted that Crown Jade, acting as an independent party to the transaction, found significant hail damage to the roof justifying a full roof replacement.

29. Mr. Konovalov also criticized Rimkus' reliance on a source material titled "Protocol for Assessment of Hail Damaged Roofing" because the report does not cover commercial ballast roofing systems or flat roofs. The source material is also only limited to use for residential applications only.

30. Mr. Konovalov also criticized Rimkus' reliance on a source document for HVAC repairs titled "Hail Effects on Air-Conditioning Performance" because the document does not apply to insurance coverage determinations. He also mentioned that the Policy does not distinguish functional from cosmetic damage for purposes of coverage.

31. On or about March 13, 2018, the parties' engineers re-inspected Plaintiff's Property for covered property damage.

32. On or about April 20, 2018, Mr. Verastek sent Plaintiff a coverage letter stating that based upon Rimkus' supplemental engineering report, Rimkus again found no hail damage to Plaintiff's roofing system citing erosion, weathering,

mechanical impacts and/or foot fall damage as the cause of observed damage on the roof. Mr. Verastek also cited long term deterioration and deferred maintenance as the cause of the interior leaks at Plaintiff's Property.

33. Mr. Verastek also noted that Defendant's position on damage to HVAC units remained unchanged because Rimkus believed its repair methodology of combing coils fins was reasonable. Upon information and belief, Rimkus' repair methodology for Plaintiff's HVAC units does not restore the units to pre-loss efficiency.

34. Finally, Mr. Verastek noted that all damage to the gutters, downspouts, doors and windows were mechanical damage in nature and not hail damaged from the date of loss. Based upon the above findings, Mr. Verastek stated that no payment was due on the claim as the cost of repairs did not exceed Plaintiff's 2% deductible amount and Plaintiff had not yet completed repairs for release of its recoverable depreciation of $1,775.16.

35. Upon information and belief, shortly after Plaintiff sent its demand for appraisal to Defendant and Defendant requested that Plaintiff submit a sworn proof of loss demonstrating that the parties disputed the amount of loss.

36. On or about June 21, 2018, Plaintiff submitted its sworn proof of loss to Defendant in alignment with its previous estimates with a replacement cost value of $237,337.52 (actual cash value $153,544.45).

37. On or about June 28, 2018, Mr. Verastek sent Plaintiff its final coverage letter stating that he understands Plaintiff's proof of loss as seeking a fully roof

replacement from the cover loss and replacement of some of the HVAC units for hail damage.

38. Mr. Verastek's letter also outlined Defendant's position that it was denying Plaintiff's demand for appraisal because all disputes regarding damage were "coverage disputes" not proper for appraisal.

39. Upon information and belief, Mr. Verastek's statements regarding appraisal contradict the prevailing court opinions in Colorado that appraisers can determine causation as part of the appraisal process. Upon information and belief, Mr. Verastek's statements regarding appraisal misstates the Policy's terms and conditions regarding appraisal in violation of C.R.S. § 10-3-1104.

40. Finally, Mr. Verastek stated that Defendant still required Plaintiff complete all repairs by June 29, 2018 under the terms and conditions of the Policy. Upon information and belief, Defendant's June 28, 2018 letter only gave Plaintiff one day notice to complete repairs after consideration of Plaintiff's sworn proof of loss and previously submitted demand for appraisal. Upon information and belief, Defendant's requirement that Plaintiff complete repairs within one day of Plaintiff submitting its disputed sworn proof of loss is unreasonable because Plaintiff currently disputes the amount of the loss and repair methodology for completing repairs.

41. Although Defendant had the necessary documentation during the claim process to identify the proper scope of repairs and price for Plaintiff's claim, Defendant unreasonably delayed and denied covered benefits by failing to properly pay for

covered benefits and then refusing to appraise the loss in violation of the Policy's appraisal provision.

42. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claims for benefits due and owing under the Policy, Plaintiff has incurred and continues to incur damages.

## V.   FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

43. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

44. The Policy creates a contract of insurance.

45. By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim and failing to pay covered benefits under the Policy.

46. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.   SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

47. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

48. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

49. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

50. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

51. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

52. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

### THIRD CLAIM FOR RELIEF
*(Declaratory Judgment – Breach of the Appraisal Provision)*

53. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

54. Plaintiff's Policy with Defendant contains an appraisal provision that allows either party to demand appraisal on the other if either disputes the amount of loss.

55. As provided above, the parties disagree about the amount of the loss.

56. As stated above, pursuant to the Policy's appraisal provision, Plaintiff demanded that Defendant submit to the appraisal process for disputed amounts on the claim.

57. As stated above, Defendant denied Plaintiff's demand for appraisal in violation of the appraisal provisions' terms.

58. Plaintiff seeks declaratory judgment that Defendant is in breach of the appraisal provision's terms and that the Court compel Defendant to participate in the appraisal process on the disputed amounts of the claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract including its breach of the appraisal provision;
2. To compel Defendant to submit to the appraisal process under the Policy's terms and conditions;
3. All unpaid covered benefits owed under the Policy;
4. Two times the amount of all covered benefits under the Policy;
5. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;
6. Pre- and post-judgment interest; and
7. For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 27th day of July 2018.

> FURTADO LAW PC
>
> */s/ Nathanael Archuleta*
> David Furtado, Esq.
> Nathanael Archuleta, Esq.
> Katherine Goodrich, Esq.
> Furtado Law PC
> 3773 Cherry Creek North Drive,
> Ste. 755
> Denver, CO 80209
> Telephone: (303) 755-2929
> Email:   Dfurtado@furtadolaw.com
>          Nathanael@furtadolaw.com
>          katie@furtadolaw.com
> Attorneys for Plaintiff